UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| WILLIAM COLLINS, | § | |
|---|---|---|
| *Plaintiff,* | § | |
| v. | § | Civil Action No. 3:18-CV-01788-X |
| SAFECO INSURANCE COMPANY OF INDIANA, | § | |
| *Defendant.* | § | |

# MEMORANDUM OPINION AND ORDER

This action alleges that defendant Safeco Insurance Company of Indiana (Safeco) failed to pay the plaintiff William Collins under its insurance policy for roof damage caused by a hailstorm. Safeco moved to strike three of Collins's experts [Doc. Nos. 37, 39, & 41], and Collins moved to strike one of Safeco's experts [Doc. No. 43]. Upon consideration, the Court **GRANTS** Safeco's motion to strike Earl Stigler, **DENIES** Safeco's motion to strike Derek Steiner, and **DENIES** Safeco's motion to strike David Hastings. Lastly, the Court **GRANTS** Collins's motion to strike Gary Boyd. As this order affects the substance of Safeco's arguments for its motion for summary judgment [Doc. No. 32], the Court orders Safeco to file an amended motion for summary judgment within 14 days of the issuance of this order. When Safeco files the amended motion for summary judgment, the Court will dismiss as moot the original motion for summary judgment.

1

I.

On or about December 26, 2015, a hailstorm hit the Desoto, Texas area and damaged the roof of Collins's house. Collins filed a claim on his Safeco insurance policy, requesting payment for the damage. Safeco investigated the claim, prepared a report, and decided to either deny or underpay the claim. Safeco later agreed to investigate the matter further through an appraisal process, which appraised the damage to be $116,549.35 for replacement cost value and $78,890.75 for actual cost value. Safeco did not pay the claim, contending the damage to the roof is cosmetic. Therefore, Safeco excluded roof damage from the policy.

On June 6, 2018, Collins filed a petition in the 192nd Judicial District Court in Dallas County, Texas, alleging that Safeco's failure to pay his insurance claim violated the Texas Insurance Code and breached their contract. Safeco subsequently removed the case to this Court on July 11, 2018 [Doc. No. 1]. Since then, Safeco has filed a motion for summary judgment [Doc. No. 31] and motions to strike three of Collins's experts, while Collins has filed a motion to strike one of Safeco's experts.

II.

Before the Court are Safeco's and Collins's motions to strike experts. Federal Rule of Evidence 702 governs the admissibility of expert testimony as evidence. As a preliminary matter, under Federal Rule of Civil Procedure 26(a)(2), a party disclosing a non-retained expert[1] must disclose the subject matter on which the witness is

---

[1] A non-retained expert is an expert who is neither retained or specially employed to provide expert testimony in the case nor is regularly involved in giving expert testimony as an employee of a party. *See* FED. R. CIV. P. 26(a)(2)(B)–(C).

2

expected to present evidence under Federal Rule of Evidence 702 and a summary of the facts or opinions to which the witness is expected to testify.

Rule 702 permits opinion testimony from a witness "'qualified as an expert by knowledge, skill, experience, training, or education' if the expert's knowledge will assist the trier of fact and (1) 'the testimony is based on sufficient facts or data,' (2) 'the testimony is the product of reliable principles and methods,' and (3) 'the expert has reliably applied the principles and methods to the facts of the case.'"[2] This Court, in performing its gatekeeper function, must permit only reliable and relevant testimony from qualified witnesses to be admitted as expert testimony, as reflected in Rule 702.[3] The "party offering the expert testimony must prove by a preponderance of evidence" that the testimony is "reliable and relevant."[4]

However, this gatekeeper function applies to the admissibility of expert testimony and not to its weight, which "should be left for the jury's consideration."[5] Indeed, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of

---

[2] *Cedar Lodge Plantation, L.L.C. v. CSHV Fairway View I, L.L.C.*, 753 F. App'x 191, 195 (5th Cir. 2018) (quoting Federal Rule of Evidence 702).

[3] *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) ("[U]nder the Rules the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable. The primary locus of this obligation is Rule 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify."); *see also Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999) ("In *Daubert,* the Supreme Court instructed district courts to function as gatekeepers and permit only reliable and relevant expert testimony to be presented to the jury." (citing *Daubert,* 509 U.S. at 590–93)).

[4] *Barnes v. BTN, Inc.*, 555 F. App'x 281, 285 (5th Cir. 2014) (per curiam) (quoting *Mathis v. Exxon Corp.*, 302 F.3d 448, 459–61 (5th Cir. 2002)).

[5] *United States v. 14.38 Acres of Land, More or Less Situated in Leflore Cty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)).

3

attacking shaky but admissible evidence."[6] Generally, "questions relating to the bases and sources of an expert's testimony affect the weight to be assigned that opinion rather than its admissibility."[7]

Whether an expert is qualified to testify is a question of law.[8] As noted in Rule 702, the witness must be qualified by virtue of his "knowledge, skill, experience, training, or education." An expert does not need to be "highly qualified in order to testify about a given issue."[9] Differences in expertise chiefly concern the weight to be assigned to the testimony by the trier of fact and not its admissibility.[10] Even so, "a district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[11]

Expert testimony is relevant if it goes to assisting the trier of fact to understand the evidence or to determine a fact in issue.[12] Federal Rule of Evidence 401 further clarifies relevant evidence as that which has "any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[13]

Expert testimony is reliable if "the reasoning or methodology underlying the

---

[6] *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

[7] *Viterbo*, 826 F.2d at 422 (citing *Dixon v. Int. Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985)).

[8] *Mathis*, 302 F.3d at 459 (citing Fed. R. Evid. 104(a)).

[9] *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009).

[10] *See id.* (citing *Daubert*, 509 U.S. at 596).

[11] *Wilson*, 163 F.3d at 937 (citing *Holbrook v. Lykes Bros. Steamship Co., Inc.*, 80 F.3d 777, 781 (3d. Cir. 1996)).

[12] *Daubert*, 509 U.S. at 591.

[13] *See Mathis*, 302 F.3d at 460 (quoting Federal Rule of Evidence 401).

testimony is scientifically valid."[14] Such testimony must be "more than subjective belief or unsupported speculation."[15] In other words, this Court need not admit testimony "that is connected to existing data only by the *ipse dixit* of the expert."[16] The Court also does not need to admit testimony based on indisputably wrong facts.[17] In conducting its analysis, the Court focuses on the reasonableness of the expert's approach regarding the matter to which his testimony is relevant and not on the conclusions generated by the expert's methodology.[18] The Court normally analyzes questions of reliability using the five nonexclusive factors known as the *Daubert* factors.[19] These factors may not be pertinent "in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."[20]

The *Daubert* factors are not too helpful in assessing the experts' methods in this case. And as neither party has briefed these factors in any of the motions at

---

[14] *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 592–93).

[15] *Daubert*, 509 U.S. at 590.

[16] *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

[17] *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996) ("Certainly nothing in Rule 703 requires a court to admit an opinion based on facts that are indisputably wrong." (quoting *Christophersen v. Allied-Signal*, 939 F.2d 1106, 1114 (5th Cir. 1991) (en banc)).

[18] *Daubert*, 509 U.S. at 595; *See, e.g., Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153–54 (1999) (explaining the Court's analysis of a tire expert's use of a particular method of inspection to reach his conclusions).

[19] The five nonexclusive *Daubert* factors are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593–94.

[20] *Kumho Tire Co.*, 526 U.S. at 150 (citations omitted).

5

issue, the Court will evaluate the experts' methodologies based off the parties' briefing and their arguments on whether the experts' testimony complies with the general *Daubert* standards.[21]

A.

Collins has designated Stigler, an insurance claims adjuster, as an expert to opine on the reasonableness of Safeco's investigation and handling of Collins's roof damage insurance claim. Safeco argues, among other things, that Stigler's expert designation and report should be struck because Stigler's testimony on this matter is unreliable.

The Court finds that Collins has not met its burden of proof to show that Stigler's testimony is reliable. To do so, Collins must show that "the reasoning or methodology" underlying Stigler's testimony is "scientifically valid."[22] Here, there is no discernible methodology to evaluate. The reliability of Stigler's opinions, as stated in Collins's expert disclosures, is derived solely from Stigler's own experience as a claims adjuster. Also, Stigler in his expert report does not cite to any guidelines, training or certification, or any other authoritative source on the proper methodology for investigating a roof damage claim.[23] Without such citations, Stigler's opinion on how to handle Collins's roof damage claim amounts to "subjective belief or

---

[21] *See, e.g., Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *4 (N.D. Tex. June 22, 2010).

[22] *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592–93).

[23] The Court notes that Stigler's report cites the National Association of Insurance Commissioners (NAIC) Standards of Conduct of Independent Adjusters and section 541.060 of the Texas Insurance Code, which deals with unfair settlement practices. However, these provisions relate to an insurance adjuster's ethical conduct during an investigation and do not give any guidance on how to perform an investigation assessing roof damage.

unsupported speculation" and is thus *ipse dixit*.[24]

Collins argues that Stigler's opinion is not mere *ipse dixit* because he bases his opinion on the claim file, the Safeco insurance policy, correspondences, National Oceanic and Atmospheric Administration weather data, the roof tile manufacturer's specifications, the public adjuster's file and Stigler's own extensive experience adjusting similar claims. This argument misses the point. The issue here is not the reliability of the facts in the file Stigler had but rather the reliability of Stigler's methodology in analyzing those facts. As explained above, Collins has not met his burden of proof to show that Stigler's methodology is reliable. For these reasons, the Court hereby **GRANTS** Safeco's motion to strike Stigler's expert designation and report.

B.

Collins has designated Steiner, a roofing contractor, as a non-retained expert to opine on whether the roof damage was cosmetic or functional, the appropriateness of the appraisal award amount, and the date on which the hailstorm causing the roof damage occurred. Safeco moves to strike Steiner's expert designation because Collins's expert disclosures did not meet the standard set out in Federal Rule of Civil Procedure 26(a)(2)(C) for non-designated experts. Safeco further contends Steiner is unqualified to testify on whether the roof damage was cosmetic or functional and that his testimony is unreliable. Lastly, Safeco argues that Steiner's testimony on the

---

[24] *Daubert*, 509 U.S. at 590; *See Gen. Elec. Co.*, 522 U.S. at 146 (noting that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert").

7

appraisal award and the date of the hailstorm is irrelevant.

The Court finds that Collins's has met the Rule 26(a)(2)(C) disclosure standard for Steiner, has demonstrated that Steiner is qualified, and has met his burden to show that Steiner's testimony is reliable and relevant.

First, Collins's expert disclosures for Steiner meet the Rule 26(a)(2)(C) requirements. The disclosures stating that Steiner will opine that the hailstorm occurred on December 26, 2015, that the appraisal award amount was appropriate, and that the damage done to the roof was functional and not cosmetic. The disclosures further summarize that Steiner inspected Collins's roof shortly after the hailstorm and was present during Safeco's inspections.

Safeco argues that Collins does not meet the Rule 26(a)(2)(C) disclosures because he fails to provide the basis of Steiner's opinion that the damage to Collins's roof is functional. But that is not what Rule 26(a)(2)(C) requires. The rule requires a summary of the "opinions to which the witness is expected to testify" and says nothing about providing the bases of those opinions. As noted above, Collins has listed the opinions Steiner will testify on. Thus, Collins has met his Rule 26(a)(2)(C) disclosure requirements.

Second, Steiner is qualified to testify on whether damage to Collins's roof is cosmetic or functional. According to his declaration, signed on July 30, 2019, Steiner is a roofing contractor with 12 years of experience in installing roofs and inspecting damaged roofs, including those damaged by hail. Steiner stated in his deposition, on July 24, 2019, that he is HAAG certified, which means he received specialized

training to assess roof damage, and is also certified by the International Code Council, which provides training on the mechanics of roofing. Both of these credentials have industry recognition.[25] Due to these credentials and his experience, the Court finds Steiner is qualified to testify as to assessing roof damage, and to the proper methods of doing so, by virtue of his "knowledge, skill, experience, training, or education."[26]

Safeco argues that Steiner is not qualified to testify because he has never authored or spoken about cosmetic versus functional roof damage and that he cannot assess damage to metal roof tiles because he is not a metallurgist. Safeco further argues Steiner is unqualified because it finds several of Steiner's sources he relies on questionable. Regarding book deals, speaking engagements, and metallurgist training, Safeco's complaints go to the level of Steiner's expertise. Such differences go to the weight to be assigned to the testimony by the trier of fact and not to its admissibility.[27] An expert does not need to be "highly qualified in order to testify about a given issue."[28] Regarding Steiner's sources, questions relating to the sources of an expert's testimony generally affect the testimony's weight rather than its

---

[25] *See, e.g.*, https://www.iccsafe.org/about/who-we-are/ (noting that the International Code Council has more than 64,000 members and 377 chapters worldwide); https://haageducation.com/learn/course-catalog/2/ (noting that over 18,000 roof inspectors in the United States and Canada have been certified through HAAG to inspect residential roofs); https://www.schaefersiding.com/siding/haag-certified-mean/ (stating HAAG certification is the gold standard in the roofing business); https://www.allstateswindows-siding.com/haag-certification/ (noting that the company who issues HAAG certification is world-renowned).

[26] FED. R. EVID. 702.

[27] *See Huss*, 571 F.3d at 452 ("Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." (citing *Daubert*, 509 U.S. at 596)).

[28] *Huss*, 571 F.3d at 452.

admissibility.[29] This issue also goes to the level of Steiner's expertise.[30] Safeco will have its chance to make its case that Steiner's sources are questionable in the courtroom. Steiner's experience, along with his HAAG and International Code Council certifications, show Steiner is qualified to testify as to roof damage by virtue of his "knowledge, skill, experience, training, or education."[31]

Additionally, Steiner's testimony on whether the damage to Collins's roof was functional or cosmetic is sufficiently reliable to be admissible. Although Steiner bases his testimony on his own experience, he also states in his deposition that he relies on the standards he learned pursuant to his HAAG and International Code Council certifications. Reliance on these certifications demonstrates by a preponderance of the evidence the reasonableness of Steiner's approach and moves his testimony beyond "subjective belief or unsupported speculation" to "scientific validity."[32] The Court finds that Collins has met his burden of proof to show Steiner's testimony is reliable insofar as the evidence shows Steiner is relying on his experience and certifications.

Safeco also alleges Steiner's testimony relies on indisputably wrong facts and misrepresents Safeco's investigation of Collins's roof. Relating to the facts, Safeco points to Steiner's deposition and argues that Steiner bases his testimony on the belief that the damage to the roof caused interior leaks, even though an April 15, 2019

---

[29] *Id.*

[30] *Id.*

[31] FED. R. EVID. 702.

[32] *Daubert*, 509 U.S. at 590.

10

deposition by the homeowner Esther Collins reveals that no such leaks occurred. But Steiner does not base his testimony that the roof had functionable damage on any perceived interior leaks. Although Steiner believed there was interior leaking, when asked what caused the leaks, he responded that "it was not able to be determined."[33] As such, Safeco has not shown that Steiner has based his testimony on incorrect facts.[34] Relating to misrepresenting Safeco's investigation, Safeco alleges Steiner wrongfully asserted Safeco did not investigate the underside of the roof shingles. In determining reliability, the Court does not focus on the conclusions generated by the expert's methodology but rather on the reasonableness of the expert's approach.[35] Safeco's complaint relates to a factual conclusion and not to Steiner's methodology or reasoning and so does not raise a genuine issue as to reliability.

Finally, Steiner's testimony on the date of the hailstorm and the appropriateness of the appraisal amount is relevant insofar as it will assist the trier of fact in understanding the evidence concerning whether Safeco should have paid out Collins's insurance claim.[36] Relating to the hailstorm date, Collins contends that Safeco's experts allege in their reports that the hailstorm occurred over two years before the date Collins alleges. Regarding appraisal, Collins contends the appraisal

---

[33] Appendix to Safeco's *Motion to Strike Steiner*, at 231 [Doc. No. 40].

[34] Moreover, Safeco has not provided any evidence that Steiner's subsequent testimony in the deposition on the damage to the roof relies on whether there was leaking in the house; the testimony on roof damage stands independently.

[35] *Daubert*, 509 U.S. at 595; *See, e.g., Kumho Tire Co.*, 526 U.S. at 153–54 (explaining the Court's analysis of a tire expert's use of a particular method of inspection to reach his conclusions).

[36] *See Daubert*, 509 U.S. at 591 ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance.").

11

award does not delineate what amount of the appraisal is for cosmetic versus functional damage. Collins wants Steiner to testify on what that delineation should be. These issues are both relevant insofar as they assist the trier of fact understand the evidence as to whether Collins should have been paid under the Safeco insurance policy. How much of the appraised damage is cosmetic versus functional affects how much Collins may be entitled to and the date the hailstorm occurred could impact the trier of fact's assessment of Safeco's investigation and whether Collins qualified for coverage. Thus, Steiner's testimony on these matters is relevant.

Safeco argues Steiner's testimony on these matters is irrelevant because Safeco does not dispute these facts and so there is no fact issue here. However, for the reasons stated above, Collins maintains these disputes do exist and that Steiner's testimony would assist the trier of fact in resolving them. The Court agrees with Collins. If there truly is no dispute on these facts, the Court invites the parties to file a joint stipulation saying so.

For the above reasons, Court hereby **DENIES** Safeco's motion to strike Steiner's expert designation.

C.

Collins has designated Hastings, a claims adjuster, as a non-retained expert to opine on whether the roof damage was cosmetic or functional, the appropriateness of the appraisal award amount, and the date of the hailstorm at issue. Safeco moves to strike Hastings's expert designation because: (1) Hastings is not qualified to testify as to whether the roof damage was functional or cosmetic; (2) Hastings's testimony

on this issue is unreliable; and (3) testimony on the date of the hailstorm and appraisal amount are irrelevant because Safeco does not dispute these matters. The Court finds that Collins has met his burden to show that Hastings is qualified and that his testimony is reliable and relevant.

Hastings is qualified to testify as to whether the damage done to Collins's roof was functional or cosmetic. Hastings's CV reveals that he has been an adjuster for over two decades and has extensive experience with adjusting, claims handling, estimating, and appraisal for both residential and commercial construction. His CV also shows he has handled more than 15,000 claims, which include claims for hail damage, and he has inspected damage done to properties. In response, Safeco argues that determining whether roof damage is functional or cosmetic is particularly complex and technical and that a claims adjuster is unqualified to make such an analysis. Safeco's complaint concerns the level of Hastings's expertise. Such differences generally go to the weight to be assigned to the testimony by the trier of fact and not to its admissibility.[37] An expert does not need to be "highly qualified in order to testify about a given issue."[38] Hastings's experience with claims handling, particularly with hail damage claims, and with assessing property damage show Hastings is qualified to testify as to roof damage by virtue of his "knowledge, skill, experience, training, or education."[39]

---

[37] *See Huss*, 571 F.3d at 452 ("Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility." (citing *Daubert*, 509 U.S. at 596)).

[38] *Huss*, 571 F.3d at 452.

[39] FED. R. EVID. 702.

Hastings's testimony on the functionality of the roof is reliable. Safeco, as it does with Steiner, alleges Hastings misrepresents Safeco's investigation of Collins's roof when he asserts that Safeco did not investigate the underside of Collins's roof shingles. As also with Steiner, the Court, in determining reliability, does not focus on the conclusions generated by the expert's methodology but rather on the reasonableness of the expert's approach.[40] Safeco's complaint relates to a factual conclusion and not to Hastings's methodology or reasoning and so does not raise a genuine issue as to reliability.

Lastly, Hastings's testimony on the date of the hailstorm and the appropriateness of the appraisal amount is relevant for the same reason Steiner's testimony is relevant. Hastings's testimony, like Steiner's, goes to assisting the trier of fact in understanding the evidence as to whether Collins should have been paid under the Safeco insurance policy.[41]

For the reasons stated above, the Court hereby **DENIES** Safeco's motion to strike Hastings's expert designation.

D.

Safeco has designated Boyd, a provider of commercial roofing and waterproofing services, as a retained expert to opine in part on the cause and extent of the hail damage to the Collins's roof. Collins argues, among other things, for the

---

[40] *Daubert*, 509 U.S. at 595; *See, e.g., Kumho Tire Co.*, 526 U.S. at 153–54 (explaining the Court's analysis of a tire expert's use of a particular method of inspection to reach his conclusions).

[41] *See Daubert*, 509 U.S. at 591 ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance.").

14

Court to strike Boyd's expert designation and report because it is based on a definition of cosmetic damage that differs from the insurance policy and so is irrelevant.

The Court agrees: Safeco has failed to meet its burden to show that Boyd's testimony is relevant because it is based on a definition of cosmetic damage that differs from the insurance policy's definition. Boyd relies on a definition of cosmetic damage from a United States Steel Corporation bulletin, which states that cosmetic damage caused by hail "is simply damage that has an adverse effect on appearance, but does not affect the performance of the roof."[42] The next sentence in the bulletin states "[f]unctional damage results in diminished water-shedding ability and reduction in the expected service life of the roof."[43] As simple as that distinction is, it was not included in Safeco's policy with Collins. The Safeco insurance policy defines cosmetic damage as "any loss that is limited to the physical appearance of a metal roof surface" and does not provide a definition for functional damage.[44]

Although superficially similar, what cosmetic damage encompasses under the Safeco policy and the Steel Corporation bulletin are quite different. Cosmetic damage and functional damage are two sides of the same coin. If damage is not cosmetic, then it is functional and vice versa. The functional damage definition in the Steel Corporation bulletin narrows what functional damage is to diminished water-

---

[42] Appendix to Collins's *Motion to Strike Gary Boyd*, at 24 [Doc. No. 44].

[43] *Id.*

[44] Appendix to Safeco's *Motion for Summary Judgment,* at 71 [Doc. No. 33]. The Court analyzes Safeco's insurance policy looking only at the "four corners" of the policy. *Ironshore Specialty Ins. Co. v. Aspen Underwriting, Ltd.*, 788 F.3d 456, 460 (5th Cir. 2015) (internal citations omitted).

shedding ability and a reduction to the life-expectancy of the roof. The logical consequence of this narrowing is that what constitutes cosmetic damage is everything else.

This broadened cosmetic damage definition is not contemplated by the text of the cosmetic damage definition in the Safeco insurance policy. The policy's definition concerns loss "that is *limited* to the physical appearance of a metal roof surface."[45] Reading this language together with the fact that the policy does not have a functional damage definition, what constitutes functional damage broadens to every other kind of damage that does not concern the physical appearance of the roof surface. In short, the Safeco policy's definition of cosmetic damage is narrower than the Steel Corporation definition on which Boyd relies. This difference in definitions impacts one of the central issues of this case: whether Collins's roof damage was covered by Safeco's insurance policy.

Safeco contends that even if the Steel Corporation definitions differ from Safeco's, Boyd's methodology in determining the extent of the damage done to the roof is still relevant. But this is not true. Boyd's methodology is based on the Steel Corporation definitions and so is already tainted by them. To take an analogy from criminal law, Boyd's methodology is the fruit of a poisonous tree.

Boyd's testimony would not assist the trier of fact to understand or determine the extent of the damage done to Collins's roof. Indeed, his testimony will likely

---

[45] Appendix to Safeco's *Motion for Summary Judgment*, at 71 [Doc. No. 33] (emphasis added).

confuse the trier of fact because he will be basing his opinions on what cosmetic and functional damage are using a different standard than what the Safeco policy dictates. In relying on Steel Corporation's definitions, Boyd's testimony is ultimately irrelevant because it is not regarding a fact that is "of consequence to the determination of the action."[46]

For these reasons, the Court hereby **GRANTS** Collins's motion to strike Boyd's designation and report.

III.

For the reasons stated above, the Court **GRANTS** Safeco's motion to strike Earl Stigler's expert designation and report, **DENIES** Safeco's motion to strike Derek Steiner's expert designation, and **DENIES** Safeco's motion to strike Hastings's expert designation. Lastly, the Court **GRANTS** Collins's motion to strike Gary Boyd's expert designation and report.

Taking this ruling into consideration, the Court orders Safeco to file an amended motion for summary judgment within 14 days of the issuance of this order.[47] Pursuant to Local Rule 7.1(e), Collins will have 21 days from the date of Safeco's filing of its motion to respond. Pursuant to Local Rule 7.1(f), Safeco will have 14 days to reply to Collins's response. Upon Safeco's filing of its amended motion, the Court will dismiss as moot Safeco's currently pending motion for summary judgment [Doc. No. 31].

---

[46] *See Mathis*, 302 F.3d at 460.

[47] If Safeco is concerned about preserving error for appeal, it may include a footnote in its re-filed motion for summary judgment stating that it is preserving error as to the findings at issue.

17

**IT IS SO ORDERED** this 8th day of January 2020.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE